```
IN THE UNITED STATES DISTRICT COURT
    FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| IN RE: | MASTER FILE |
| SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION | MDL-721<br>Civil No. 87-0006 (RLA) |

**ORDER NO. 749**
**IN THE MATTER OF FINAL DISPOSITION OF UNCLAIMED FUNDS**

After twenty years since the final distribution was effected in these proceedings, the time has come for the Court to dispose of the settlement funds that have gone unclaimed in this litigation. These funds are derived from several prior settlement fund distributions carried out by the Court during the past 18 years,[1] which have remained unclaimed despite numerous efforts by the Court and counsel to identify corresponding plaintiff recipients.[2]

---

[1] See, e.g., Order No. 346, In the Matter of the First Distribution of the Settlement Award (docket No. 17022); Order No. 348, In the Matter of Clarification of Order No. 346 (docket No. 17046); Order No. 364, Approving Distribution Reports and Ordering Distribution of Plaintiffs' Awards... (docket No. 17178); Order No. 685, Approving PSC Report of Reserve Accounts and Order for Final Distribution (docket No. 19414).

[2] See Order No. 743 Authorizing Publication of Notice Regarding Unclaimed Funds (docket No. 19512). See also, Order No. 680, In the Matter of Missing Plaintiffs (docket No. 19409); Order No. 671, In the Matter of Newspaper Ads to Locate Missing Plaintiffs (docket No. 19388), Order No. 647 In the Matter of Settlement Distribution Confirmation Forms (docket No. 19323).

**MDL-721**  **ORDER NO. 749**  **Page 2**

It is not uncommon at the conclusion of a mass tort litigation action to have funds leftover, which, for a number of reasons, cannot be distributed to the parties entitled to them because these plaintiffs or their heirs simply cannot be located. In such instances, the responsibility falls on the Court to direct the disposition of these funds.

In ordering distribution of unclaimed funds, the courts rely on their general equity power or on what is commonly referred to as the *cy pres* doctrine.

"The cy pres doctrine originated in the common law as a method of fairly distributing a trust fund, the original purpose of which failed in some respect. The term cy pres derived from the Norman French term 'cy pres comme possible' which means 'as near as possible.' Under the cy pres doctrine, once a trust fund's original purpose fails, the fund is to be distributed to the 'next best' use." Kevin M. Forde, *What Can a Court Do With Leftover Class Action Funds? Almost Anything!* 35 No. 3 Judges' J.19 (1996) (internal citations omitted).

Courts have claimed broad discretion in determining how to satisfy the "next best" use criteria. *Id.* Indeed, federal and state courts have distributed unclaimed funds to educational institutions or charities, legal assistance foundations, law schools, law

| | | |
|---|---|---|
| MDL-721 | ORDER NO. 749 | Page 3 |

libraries, as well as public awareness and environmental law programs.[3]

Although the prospect of undistributed funds raises the possibility that these monies should "escheat" to the federal government as unclaimed property, some courts, faced with analogous situations, have found escheat laws inapposite, and concluded that courts of equity may dispose of funds in a fair manner without being compelled to utilize the federal statutes. See, *e.g.* Van Gemert v. Boeing Co., 739 F.2d 730, 735 (2d Cir. 1984). The *Van Gemert* court explained:

> We hold that [28 U.S.C.] § 2041 does not limit the discretion of the district court to control the unclaimed portion of a class action judgment fund. Whether the money has been paid into the court or whether an alternative method of administering payment is used, the money held is within this court's jurisdiction and subject to the court's order... The statutes referred to do not control when a court fashions a plan for distributing unclaimed funds.

The *Van Gemert* court further noted that "the critical determining factor... is that trial courts are given broad discretionary powers in shaping equitable decrees. Equitable remedies are a special blend of what is necessary, what is fair, and what is workable."

*Id.* at 737 (Citations, quotation marks and brackets omitted).

Another *cy pres* method of distributing excess funds calls for their disposition by judicial resolution, after application and

---

[3] A comprehensive list of the various and mixed disposition of unclaimed trust funds can be found in Forde, *supra* at 21 to 23.

| MDL-721 | ORDER NO. 749 | Page 4 |
|---|---|---|

suggestions to the court by interested persons or parties, allowing thereby for the creation of a flexible, equitable remedy. This method allows the court to avoid the high costs associated with administering and distributing the trust funds once it is clear that the original purposes of the fund cannot be realistically achieved. This is what we propose to do today.

It is perfectly plain to the Court that since the Dupont fire took place in 1987, it would be impossible, as a practical matter, to track down all the plaintiffs and attempt to make some sort of *pro rata* distribution of the excess funds, since the costs entailed would consume a substantial quantity of the monies. On the other hand, providing disbursement of the residual monies to established charitable organizations, including those devoted to improvements in the administration of justice, provides a flexible, equitable remedy.

Thus, we conclude that, while use of funds for purposes closely related to their origin might be the best application, the *cy pres* doctrine and the courts' broad equitable powers now permit use of these funds for other public interest purposes by either educational, charitable, or other public service organizations, both for current programs or to constitute an endowment and source of future income for long-range programs. The court is fully aware of the advantages of having endowment income to supplement current contributions to

| | | |
|---|---|---|
| MDL-721 | ORDER NO. 749 | Page 5 |

finance charitable operations.[4] We have before us a submission and application from such an organization, the Animal Legal Defense Fund.[5]

Because the Court believes the monies could be used for a truly worthy cause rather than continue to lie fallow, the Court hereby APPROVES a *cy pres* distribution of the funds remaining unclaimed as of date to the Animal Legal Defense Fund, a charitable organization, to continue its work of protecting the lives and advancing the interests of animals through the legal system by focusing on the following organizational goals:

- providing pro bono assistance to prosecutors and law enforcement handling cruelty cases;
- working to strengthen anti-cruelty laws at the federal, state, territorial and local level;
- providing public education though seminars, workshops, resources, and other outreach efforts;
- promoting and encouraging the future of animal law through student animal law chapters, and coordinating scholarships, clerking and internship and grant opportunities for law students and legal professionals alike;

---

[4] See Superior Beverage Co. V. Owens-Illinois, Inc., 827 F.Supp. 477, 479-80 (N.D. Ill. 1993).

[5] See letter dated August 13, 2009, attached hereto as Exhibit A.

| MDL-721 | ORDER NO. 749 | Page 6 |
|---|---|---|

- filing groundbreaking lawsuits to stop animal abuse and expand the boundaries of animal law.

Based on the foregoing, and since the parties to this action have received proper notice through Order No. 743, issued on July 28, 2009 (docket No. 19512), the Clerk of the Court is hereby directed to issue a check in the amount of **$126,977.49,** corresponding to the total of the unclaimed funds in this case, to the Animal Legal Defense Fund and mail it to their address: 170 East Cotati Avenue, Cotati, California 94931, accompanied with a copy of this Order and a written acknowledgment to be signed by its Chairperson or Executive Director. The duly signed written acknowledgment is to be returned and filed with the Court no later than **February 10, 2010.** Acceptance of the distribution shall constitute an undertaking by the Animal Legal Defense Fund to use the funds in the manner proposed to the Court and summarized in this Order.[6]

IT IS SO ORDERED.

San Juan, Puerto Rico, this 31st day of December, 2009.

                                          S/Raymond L. Acosta
                                          RAYMOND L. ACOSTA
                              United States District Judge

---

[6] See generally, *In re*: Motorsports Merch. Antitrust Litig. 161 F.Supp.2d 1329 (N.D. Ga. 2000) (*cy pres* distribution of excess funds made to several charities, including Make-a-Wish Foundation; the Red Cross; the Lawyers' Foundation of Georgia; Kids' Chance; and the Susan G. Komen Breast Cancer Foundation, among others).